IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDRE ROBINSON,

                    Plaintiff,

        Vs.                                    Case No. 06-3225-SAC

RAY ROBERTS, DEBBIE BRATTON,
SUSAN GRIBREAL, KEN LUMAN,
MAJOR MEDLIN, LT. HERMRECK,
LT.  INGRAM, CARRIE MARLETT,
ROSHONNA COLLINS, AMY
HANKINS, NURSE NAVE, DOCTOR
SHARP, DOCTOR JONES, CORRECT
CARE SOLUTIONS, INC. L.L.C.
KANSAS, JOHN & JANE DOE,

                    Defendants.


MEMORANDUM AND ORDER

        This civil rights complaint brought pursuant to 42 U.S.C. §1983 was

filed by an inmate who was confined at the El Dorado Correctional Facility

(EDCF). Plaintiff alleges (1) deliberate indifference to his serious medical

needs; (2) denial of meaningful review of plaintiff's placement in

segregation; and (3) improper use of placement in segregation to

allow indefinite solitary confinement. *See* Dk. 5.The plaintiff seeks

injunctive and declaratory relief as well as nominal, compensatory and

punitive damages. The case comes before the court on the motion of some

defendants to dismiss, and the motion of other defendants for summary judgment.

All defendants are sued in their individual and official capacities. Defendants moving to dismiss the case are Roberts (Warden of El Dorado Correctional Facility (EDCF)); Bratton (at that time Deputy Warden of Programs EDCF); Gibreal (Deputy Warden of Support Services); Luman (Deputy Warden of Operations); Medlin (Major, Head of Security); Hermreck (I & I Lieutenant); Ingram (Shift Lieutenant) and Marlett (Unit Team Manager). These defendants were employed by the Kansas Department of Corrections and worked at El Dorado Correctional Facility at all relevant times.

Defendants moving for summary judgment are Collins, Hankins, and Correct Care Solutions (CCS). The latter is a company that provides medical care and treatment to inmates at the El Dorado Correctional Facility through a contract with the Kansas Department of Corrections, and the former are employees of CCS.

**Undisputed Facts**

Plaintiff was placed in administrative segregation on June 9, 2002, classified as other security risk (OSR). In 2005, he was transferred to the

2

infirmary to receive treatment for what plaintiff states is lupus. On December 29, 2005, the plaintiff was ordered to be released from administrative segregation while in the infirmary due to his illness.

On January 20, 2006, Ms. Collins, an RN employed by Correct Care Solutions (CCS), was assisting the plaintiff with his shower. She reported that the plaintiff "grabbed me by the throat and pulled me nose to nose with himself while I was assisting him with a shower. After letting me go he again grabbed me by the neck and picked me up, placed me against the wall and threatened me." Dk. 44, Exh. A. A disciplinary case was opened and the plaintiff received the written report that same day. Plaintiff was immediately placed on administrative segregation for "Pre-Hearing Detention" pursuant to IMPP 20-104 I.B.4 "for the safety and security" of the facility. Dk. 44 Exh. F. The Plaintiff was advised of the reason for his placement by his receipt of an Administrative Segregation Report on January 20, 2006. Plaintiff disputes the veracity of Ms. Collins' report, denies any use of aggressive behavior, and attributes an ulterior motive to Ms. Collins, but does not challenge the legality of his placement in administrative segregation at that time.

At the conclusion of the evidentiary hearing on the disciplinary

3

complaint on January 27, 2006, the plaintiff was found not guilty of the charged offense of battery. Despite his acquittal and his request to return to the general population, he was not released from administrative segregation. Instead, his administrative segregation status was changed from "Pre-Hearing Detention" to "Pending Investigation." *See* Dk.44 Exh. I, (No. 18) at I.2.a. This was apparently because the Intelligence and Investigation staff had not yet concluded their investigation of the alleged battery.

On January 31, 2006, Defendant Bratton, acting as Defendant Robert's designee, overturned the not guilty finding and remanded plaintiff's disciplinary case so that testimony could be received from the Intelligence and Investigation staff, who by then had completed their investigation. On March 3, 2006, a second evidentiary hearing was held about the alleged battery, after which plaintiff was found guilty. Plaintiff appealed, contending that the second hearing violated KAR § 44-13-202(b). This regulation, applicable to disciplinary procedures of the Department of Corrections, states: "The same charge shall not be brought twice on the same facts under any circumstance if a factual finding of guilt or innocence has been made." Thereafter, the Secretary of Corrections or

4

his designee determined that the decision to rehear the plaintiff's case was erroneous, and plaintiff's disciplinary case was finally dismissed on April 20, 2006.

Before and after dismissal of the disciplinary case, the investigative staff continued to believe that Robinson presented a risk to staff. Accordingly, effective April 11, 2006, plaintiff's administrative segregation status was changed from "Pending Investigation" to "Other Security Risk" (OSR). Dk 44, Exh. H. The relevant report refers to the disciplinary case, stating: "Inmate ... physically attacked ...Ms. Collins while he was housed in the EDCF Infirmary. Due to this incident and behavior, his placement on OSR is required for the safety and control of this facility." *Id.* The reference is to the same battery charge for which the plaintiff was initially found not guilty, was subsequently found guilty, and which was ultimately dismissed.

Plaintiff did not receive the notice of his change to OSR until May 17, 2006, 35 days after the report was issued. He refused to sign the late notice, stating "I refuse to sign because my due process has been violated." Plaintiff grieved this late notice, and defendants admitted their error, but did not release the plaintiff from administrative segregation because they still considered him to be a security risk. Plaintiff remained in

administrative segregation on OSR status for approximately 15 months until he was transferred to Larned on March 1, 2007. Facts relevant to plaintiff's medical care and treatment will be set forth later in the discussion.

**Pro se plaintiff**

Pro se complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). *See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir.2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170,1173-74 (10th Cir.1997) (quotations and citations omitted). The court should not be the pro se litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), and will not accept as true conclusory allegations unsupported by factual allegations. The court's "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110.

**Dismissal Standard**

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

"[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Robbins*, 519 F.3d at 1248-49.

In §1983 cases, defendants often include the government agency and a number of government actors sued in their individual

7

capacities. Therefore it is particularly important in such circumstances

that the complaint make clear exactly who is alleged to have done

what to whom, to provide each individual with fair notice as to the

basis of the claims against him or her, as distinguished from

collective allegations against the state. *See Twombly*,127 S.Ct. at

1970-71 n. 10.

*Robbins*, 519 F.3d at 1248-49.

**CCS**

The CCS is not a "person" to be sued in a §1983 action. *Livingston v.*

*Correct Care Solutions*, 2008 WL 1808340, 1 (D.Kan. 2008). Additionally, §

1983 claims against corporate defendants may not be premised on

principles of respondeat superior. *Smedley v. Corrs. Corp. of Am.*,175 Fed.

App'x 943, 946 (10th Cir. 2005). Because the plaintiff has not identified a

policy or custom of CCS and a direct causal link between that policy or

custom and his alleged injuries, CCS cannot be held liable under §1983.

*See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir.1993);

*Smedley*, 175 Fed. App'x at 946 (10th Cir. 2005) (applying § 1983

standards for municipal liability to a corporation performing a government

function). CCS must be dismissed from the case.

8

**Immunity**

To the extent that the individual state employees are sued in their official capacities, they are entitled to Eleventh Amendment immunity and may not be sued for money damages under 42 U.S.C. §1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

**Personal participation**

It is well-settled that a defendant cannot be liable under Section 1983 unless he or she directly and personally participated in the alleged deprivation of the plaintiff's constitutional rights. *Jenkins v. Wood*, 81 F.3d 988, 994 (10thCir.1996). Moreover, plaintiff must allege more than that a defendant was a supervisor or in charge at the jail. A defendant cannot be held liable for money damages in a civil rights action based solely upon his or her supervisory capacity under the theory of respondeat superior. *Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.1996); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993).

Accordingly, the Plaintiff's allegations against Defendant Roberts, the Warden of the facility, are insufficient as a matter of law. Plaintiff does not allege any personal participation by Defendant Roberts or that an

9

"affirmative link" exists between Defendant Roberts and the alleged constitutional violations alleged in the Complaint. It is not enough to simply show that a defendant's employees engaged in behavior which violated another's constitutional rights. No "deliberate, intentional act" by Defendant Roberts is alleged. The same is true for Defendant Medlin, the Major who was Head of Security at the time. Plaintiff believes that Defendant Medlin failed to override the decison to put the plaintiff in administrative segregation and failed to conduct his own investigation, but these allegations do not equate to deliberate or intentional acts. Plaintiff agrees that defendant Luman lacks personal participation and should be dismissed from the case. These three defendants shall also be dismissed from the case.

Reading the Complaint, its supplement and its attachments broadly,[1] the court finds the other state employee defendants are not subject to dismissal from the case. Plaintiff alleges that Defendant Bratton made the decision to remand his disciplinary finding of not guilty, that Defendant Hermreck provided false information which led to the plaintiff's

---

[1]These allegations do not all appear in the Complaint, Dk. 1, but are included in subsequent supplements plaintiff filed at the order of the court. *See* Dk. 5, 8.

administrative segregation, that Defendant Ingram served on the

Administrative Segregation Review Board (ASRB) which denied his release

to the general population, and that defendant Gibreal was a member of the

PMC and reprosecuted him. Defendant Marlett served on the ASRB and

her signature appears on multiple exhibits which form the basis for the

plaintiff's complaints regarding administrative segregation. These

defendants shall remain as to plaintiff's administrative segregation claims.

Plaintiff's deliberate indifference claim shall proceed solely against

defendants Marlett, Hermreck and Hankins, against whom specific

allegations are made.[2]

**Summary judgment standard**

On summary judgment, the initial burden is with the movant to point

out the portions of the record which show that the movant is entitled to

judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*,

968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied*, 506 U.S. 1013 (1992). If

---

[2]The state defendants additionally allege that plaintiff's claims of due process deprivation and deliberate indifference to known medical needs fail to state claims for relief. Because the other defendants have moved for summary judgment on those same claims, the court prefers to decide those issues in light of the record and shall thus consider them in light of the summary judgment motion rather than on the motion to dismiss. Doing so will not prejudice the plaintiff, who has responded to all claims on the merits.

this burden is met, the non-movant must set forth specific facts which would be admissible as evidence from which a rational fact finder could find in the non-movant's favor. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998). The non-movant must show more than some "metaphysical doubt" based on "evidence" and not "speculation, conjecture or surmise." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bones v. Honeywell Intern.*, 366 F.3d 869, 875 (10th Cir. 2004). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party. *Sanders v. SW Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008).

**Administrative segregation**

Plaintiff claims that defendants improperly used placement in segregation to allow indefinite solitary confinement, and denied meaningful review of plaintiff's placement in segregation.

12

These claims allege the defendants deprived him of his liberty in violation of the Fourteenth Amendment, which prohibits states from depriving citizens of liberty without due process of law. This Amendment applies to prisoners, although their due process rights are more narrowly defined than are those of free persons. *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005), *cert. denied*, 549 U.S. 943 (2006). "The constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 228 (2001). To state a Fourteenth Amendment due process claim, a plaintiff must allege details that satisfy two elements. First, he must show that he possesses a protected liberty interest. *See id.; Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). Second, he must show that the he was not afforded the appropriate level of process.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges. v. Roth*, 408 U.S. 564, 577 (1972). The Supreme Court has specified the

13

conditions which trigger a prisoner's due process rights.

> ... in *Sandin v. Conner*, 515 U.S. 472, 484, 487, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court concluded that a prisoner is entitled to due process before he is subjected to conditions that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or disciplinary actions that "inevitably affect the duration of his sentence." *See also Talley v. Hesse*, 91 F.3d 1411, 1414 (10th Cir.1996) (discussing these two ways of establishing a liberty interest under *Sandin* ).

> As a general rule, before officials may take actions that affect these protected liberty interests, they must afford a prisoner (a) advance written notice of the charges; (b) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (c) a written statement by the factfinder of the evidence relied upon on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In addition, the decision must be supported by some evidence. *Id.*

14

*Wilson*, 430 F.3d at 1117.

Administrative segregation has also spawned many decisions. The Tenth Circuit has found that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Penrod v. Zavaras,* 94 F.3d 1399, 1407 (10th Cir.1996), quoting *Hewitt*, 459 U.S. at 468, 103 S.Ct. at 870. The Tenth Circuit "has never held the conditions, duration or restrictions of [administrative detention] presented on appeal created a liberty interest." *Hill v. Fleming*, 173 F. App'x 664, 670-71 (10th Cir. 2006). Instead, it has held that the mere placement in administrative segregation does not, on its own, implicate a liberty interest. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir.1996). See *Clemmons v. Thomas*,  86 F.3d 1166 (Table) (10th Cir. May 29, 1996) at *4. Changing an inmate's prison classification, "ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir.1994) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).

The same is true in this case. Kansas law does not grant the plaintiff a protected liberty interest in mingling with the general population. *See Murphy v. Nelson*, 260 Kan. 589, 599, 921 P.2d 1225 (1996) (holding a

15

prisoner has no protected liberty interest in remaining in the general population as opposed to being placed in administrative segregation); *Rush v. McKune*, 888 F.Supp. 123, 125 (D.Kan.1995) (Kansas prison regulations do not create protected liberty interest); *Lloyd v. Suttle*, 859 F.Supp. 1408, 1410 (D.Kan.1994) (same). *See Briscoe v. Roberts*, 116 P.3d 770, 2005 WL 1869054, 2 ( 2005). The prison regulations which arguably gave rise to a liberty interest in the above-cited Kansas cases have since been repealed, *see e.g.*, K.A.R. 44-14- 311, making more difficult a prisoner's claim that state law grants him a protected liberty interest in not being placed in administrative segregation. As found in *McDiffett v. Stotts*, 902 F.Supp.1419, 1425 -1426 (D.Kan.1995):

> ordinarily a change in an inmate's prison classification to administrative segregation does not deprive the inmate of liberty. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir.1994). There is no right independently protected under the Due Process Clause to remain in the general prison population. *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Bailey v. Shillinger*, 828 F.2d 651, 652 (10th Cir.1987). Prison officials have broad administrative and discretionary authority to remove inmates

16

from the general prison population. *Hewitt*, 459 U.S. at 467-68, 103 S.Ct. at 869-70. A decision by prison officials to place the inmate in nonpunitive administrative segregation does not implicate the Due Process Clause of the Fourteenth Amendment unless the confinement presents "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, ----, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995). *Sandin* makes clear that an inmate's segregated confinement is not such a deprivation.

The prison regulations themselves expressly disavow that they create protected liberty interests. Kansas Department of Corrections Internal Management Policy and Procedure (IMPP) No. 20-104 provides that "Administrative segregation procedures shall be established for the control of inmates for necessary administrative purposes other than punishment." It expressly notes that the policy is "not intended to establish State created liberty interests for offenders," and is "not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties." Dk. 44, Exh. I, p. 7. Here, as above, the "failure to adhere to administrative regulations does not equate to a

17

constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993). Plaintiff may not prevail simply by proving the violation of an administrative regulation, but must establish the loss of a constitutionally protected interest.

To determine whether this plaintiff's placement in administrative segregation implicates a liberty interest, the court examines the following key factors:

> whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement...; and (4) the placement is indeterminate.

*Estate of DiMarco v. Wyoming Dept. of Corrections, Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007). *See Bohanon v. Nelson*, 145 F.3d 1345 (Table) 1998 WL 174881, 1 (10th Cir.1998) (finding plaintiff's due process claim failed because "Placement in administrative segregation for several months because of legitimate concerns about Plaintiff's security risk did not impose "an atypical and significant hardship," citing *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir.1996), and *Jones v. Fields*, 1996 WL 731240 at *2 (10th Cir.1996) (unpublished) (holding that placement in administrative

18

segregation for fifteen months was not an "atypical and significant hardship"). *See Penrod*, 94 F.3d at 1407 (same).

### Purpose of segregation

Although the plaintiff appears to believe that the dismissal of his disciplinary case compels his release from administrative segregation, the court's assessment of whether the segregation relates to and furthers a legitimate penological interest, "must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *DiMarco,* 473 F.3d at 1342.

The report of the Intelligence and Investigation Officer, Tom Hermreck, concludes that the plaintiff engaged in the "exact same behavior he had a history of, which is reflected in his criminal convictions. A Central Monitor may need to be considered for these subjects." (Dk. 44, Exhibit C, p. 3, EDCF I & I Case No. 06-003). Plaintiff has prior convictions of a number of serious offenses involving violence against women. *See* Dk. 44, Att. 7. The Intelligence and Investigation Unit determined that the plaintiff's placement in administrative segregation following the alleged battery was in the interest of the safety and security of the facility. Despite the dismissal

19

of the battery case against the plaintiff, the defendants have articulated a lingering and legitimate reason to believe the plaintiff posed a potential, substantial risk to the safety of Ms. Collins or other staff members, given the similarity of the event, as related by Ms. Collins during the disciplinary hearings, to prior criminal events involving the plaintiff. *See Hewitt*, 459 U.S. at 474 (noting that a prisoner who has not engaged in improper activity may still be deemed a security risk and placed in administrative segregation.); Dk.44, Exh. C (plaintiff's criminal history); Dk. 44, Exh. E (Hermreck's affidavit stating: "Despite the inability to clearly determine whether the battery had occurred, I felt that the security and control of the institution would be better protected by the placement of [plaintiff] in administrative segregation. His history of violence was one criterion I considered when making this decision.")

**Conditions of confinement**

Plaintiff does not allege facts establishing that the conditions in administrative segregation at EDCF were more restrictive than other forms of incarceration in Kansas. In fact, his complaint fails to detail what the conditions were in administrative segregation or to compare the conditions of his administrative segregation to the ordinary incidents of prison life.

20

Since administrative segregation procedures are established for control of inmates for necessary administrative purposes other than punishment or discipline, it is likely that the conditions of placement were not extreme. Additionally, the IMPPs "include generalized directives indicating that inmates in administrative segregation should be treated, as much as possible, as inmates in the general population are treated. IMPP 11-101(V)(A)(1); IMPP 20-105(IV)(A)." *Childers v. Marlett*, 157 P.3d 1129 (Table), 2007 WL 1461408, 2 (Kan. App. 2007).

### Duration of confinement

The plaintiff does not contend, and the record does not reveal, that his placement in administrative segregation increased the duration of his confinement.

### Indefiniteness of confinement

The plaintiff does contend that keeping him in administrative segregation indefinitely, after he was found not guilty of the battery charge, without adequate review of his placement, was pretextual and violated his liberty interest.

Prison officials have "broad administrative and discretionary authority" to remove inmates from the general prison population. *Hewitt v.*

21

*Helms*, 459 U.S. 460, 467-68, 103 S.Ct. 864, 869-70, 74 L.Ed.2d 675 (1983). A "pretextual" administrative confinement might be raised as a separate constitutional violation, however. *See Soto v. Walker,* 44 F.3d 169 at 173 n. 4 (2d Cir.1995) (citing *Hewitt,* 459 U.S. at 477 n. 9).

> Of course, administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner-which will have been ascertained when determining to confine the inmate to administrative segregation-and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner.

*Hewitt*, 459 U.S. at 477. *See Wilkinson v. Austin*, 545 U.S. 209, 229, 125 S.Ct. 2384, 2397 (2005), citing *Hewitt* (noting that although *Sandin* abrogated *Hewitt* 's methodology for establishing the liberty interest, *Hewitt* remains instructive for its discussion of the appropriate level of procedural

safeguards).

Plaintiff appears to allege that pretext is shown by the falsity of Ms. Collins' report, and by his "reprosecution" after having been found not guilty of the disciplinary battery charge. These are examined below.

### False report

Plaintiff contends that defendant Collins falsified the report of the shower incident. No evidence suggests that the prison officials conspired with Ms. Collins to intentionally fabricate a report for the purpose of getting the plaintiff transferred to administrative segregation or of denying him necessary medical treatment.

> Inmates such as plaintiff are entitled to be free from arbitrary actions by prison officials. Protection from such arbitrary actions generally comes in the form of procedural due process rights, *e.g.*, prior written notice of a violation, the right to present witnesses and evidence, a written statement of fact-finding, and a decision by an impartial body. *See McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir.1999).

*Johnson-Bey v. Ray*, 38 Fed.Appx. 507, 510, 2002 WL 440796, 2 (10th Cir. 2002). Here, the record shows that the plaintiff had notice of the disciplinary charge and opportunity to present evidence at the disciplinary

23

hearing, and to appeal its result.

Disciplinary hearing officers were presented with two conflicting versions of the events by the only two eye witnesses to it - the plaintiff and Ms. Collins. Even assuming that the hearing officers erred in finding Ms. Collins' rendition of events more credible than the plaintiff's, no constitutional rights are implicated. Their decision is supported by some evidence, and their credibility call is not subject to review by this court. *See Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir.1996); *Longstreth v. Franklin*, 240 Fed.Appx. 264 (10th Cir. 2007) (finding the constitutional standard for sufficiency of evidence in the prison disciplinary context is "some evidence" or "meager" evidence).

Nor is any alleged damage to the plaintiff's reputation arising from any falsity of the report sufficient to support a cause of action.

Damage to one's reputation alone... is not enough to implicate due process protections. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (stating that "reputation alone, apart from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); *McGhee v. Draper*, 639 F.2d

24

639, 643 (10th Cir.1981) (" [S]tigmatization or reputational damage

alone, no matter how egregious, is not sufficient to support a § 1983

cause of action.").

*Kennedy v. Smith*, 259 Fed.Appx. 150, 155, 2007 WL 4532823, 4 (10th Cir.

2007). Plaintiff's allegations fail to meet the applicable "stigma plus"

standard. *See Paul*, 424 U.S. at 710-11, 96 S.Ct. 1155 (assuming the

plaintiff alleges that the government has violated the Due Process Clause

by impugning his "good name, reputation, honor, or integrity," *Jensen*, 998

F.2d at 1558, he must demonstrate that: (1) the government made a

statement about him or her that is sufficiently derogatory to injure his or her

reputation, that is capable of being proved false, and that he or she asserts

is false, and (2) the plaintiff experienced some governmentally imposed

burden that "significantly altered [his or] her status as a matter of state

law.")

Lastly, even assuming, for purposes of argument, that Ms. Collins'

report was false, the record indicates that the report was ultimately

dismissed by prison officials and no disciplinary penalties were assessed

against plaintiff as a result of the report. Viewing all the evidence in the light

most favorable to plaintiff, the plaintiff has not shown that he suffered any

25

constitutionally cognizable harm flowing from any falsity of the report. *See Chevere v. Johnson*, 38 F.3d 1220, 1994 WL 577554, (Table) (10th Cir. Oct. 17, 1994).

**Reprosecution despite acquittal**

Plaintiff also contends that his reprosecution after being found "not guilty" shows defendants' intent to keep him in administrative segregation despite his lack of wrongdoing.

The record shows that after the plaintiff was "reprosecuted" and found guilty, he appealed, contending that the second hearing violated an regulation prohibiting a second charge based on the same facts if a factual finding of innocence had been made. *See* KAR § 44-13-202(b). Thereafter, the Secretary of Corrections or his designee determined that the decision to rehear the plaintiff's case was erroneous, and plaintiff's disciplinary case was finally dismissed on April 20, 2006.

Here, as above, the Plaintiff has not shown that he suffered any harm from having undergone a second disciplinary hearing. The regulations themselves do not create an enforceable procedural right. *DiMarco,* 473 F.3d at 1341. *See Cosco v. Uphoff*, 195 F.3d 1221 (10th Cir.1999) (finding no liberty interest arising from prison regulations). Even assuming, for

26

purposes of argument, that holding the second disciplinary hearing violated the cited regulation, the plaintiff suffered no cognizable constitutional harm in having to undergo a second hearing on the same matter.

Defendant alludes to the double jeopardy clause, but "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Because the Double Jeopardy clause only applies to proceedings that are "essentially criminal" in nature, *see Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct.1779, 44 L.Ed.2d 346 (1975), "it is well established that prison disciplinary sanctions"- such as administrative segregation -"do not implicate" double jeopardy protections. *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004).

*Fogle v. Pierson,* 435 F.3d 1252, 1262 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006).

The record supports the prison officials' belief that the plaintiff posed a potential, substantial risk to the safety of Ms. Collins or other staff members. No evidence suggests that this reason was not the true reason for plaintiff's administrative segregation. The record in this case fails to

27

contain evidence that the plaintiff's continued or indefinite placement in administrative review from January of 2006 until March of 2007 was pretextual. Taken together, the *DiMarco* factors discussed above do not weigh in favor of finding that the plaintiff has an enforceable liberty interest. *See Everson v.Nelson*, 941 F.Supp. 1048, 1050 (D.Kan.1996). Plaintiff's placement in administrative segregation for approximately fifteen months was not an "atypical and significant hardship."

Even had the court found a liberty interest, the record confirms that the plaintiff received all the process which he was due. Dicta in *Hewitt* notes that confinement to administrative segregation requires "some sort of periodic review," such that the placement is not "a pretext" for indefinite confinement. *Hewitt,* 459 U.S. at 477 n. 9. Although the Tenth Circuit has not addressed the issue, other courts have held that "some sort of periodic review" is in fact required by *Hewitt*, but the review does "not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id. See, e.g., McClary v. Kelly*, 237 F.3d 185, 186 (2d Cir.2001); *Alston v. DeBruyn*, 13 F.3d 1036, 1042 (7th Cir.1994); *Toussaint v. McCarthy*, 801 F.2d 1080, 1101 (9th Cir.1986); *Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir.1983) (due process requires procedure

28

for periodic review of administrative segregation status), *cert. denied*, 467 U.S. 1228 (1984).

The record reveals and the plaintiff agrees that his placement in administrative segregation was reviewed monthly by prison officials, and that the plaintiff attended all monthly reviews except in March and July. Dk.1, pp. 18, 21, 23; Dk. 8, Exh. 1, p. 29 *et seq*; Dk. 62, p. 8.The plaintiff was permitted to participate in the reviews and had opportunity to comment during them. Plaintiff's claim that he had a right to be heard at every level of his status change within administrative segregation is unfounded. Under these circumstances, the record fails to raise a material question of fact as to any due process deprivation.

**8th Amendment deliberate indifference**

The facts relative to this claim are not in dispute. Plaintiff alleges that in 2005 he was diagnosed with lupus and arthritis. He also suffers from long-term edema. Plaintiff alleges that in April of 2006, his hands and feet began to swell drastically and painfully on several different occasions, but slowly returned to normal. Plaintiff alleges the defendants in April of 2006 refused him medical treatment for his swollen hands, feet and face.

On June 16, 2006, plaintiff alleges that he lost the ability to urinate,

and Nurse Morris attempted to drain his bladder. Plaintiff alleges that on June 19, 2006, he had extreme lower abdominal pain and an immediate need to drain his bladder. Correctional Officer Gardmen contacted Nurse Hankins requesting immediate treatment for Plaintiff. Plaintiff alleges that nurse Hankins denied the request for medical treatment because treatment was already scheduled for the next day. Also on June 19, 2006, plaintiff alleges that he became convulsive and had breathing problems, so Correctional Officer Gardmen raised the alarm and escorted plaintiff to the nurse's office where urine was drained from his bladder.

On June 23, 2006, plaintiff alleges that he had lower abdomen pain, bloody discharge, and a need for his bladder to be drained. In response, Correctional Officer McNutt contacted the infirmary and talked to a nurse. Eleven hours later, plaintiff was transported to see Nurse Darnell, who was unable to drain his bladder. On June 24, 2006, plaintiff alleges he was convulsive and had breathing problems. An emergency medical alarm was raised and plaintiff was transported to the infirmary.

On July 5, 2006, plaintiff alleges that nurse practitioner Medford recommended to Defendant Marlett that plaintiff needed to be transported to the infirmary. Defendant Marlett allegedly informed plaintiff that plaintiff

would not be transferred to the infirmary by virtue of a permanent order from Defendant Hermreck. On July 19, 2006, Correctional Officer Beecher contacted Nurse Hankins about treating plaintiff and was ordered to bring Plaintiff to the nurse's station only if an emergency medical alarm was called. On July 24, 2006, plaintiff again alleges he suffered extreme pain, and ten hours later after being refused medical treatment, drained his own bladder twice. On July 27, 2006 an emergency medical condition was called and plaintiff was transported to Wesley Medical Center.

### Analysis

Prison officials violate the Eighth Amendment where their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)(internal punctuation omitted). To establish an Eighth Amendment violation, a prisoner must meet both objective and subjective elements. The objective component is met if the deprivation is "sufficiently serious," *i.e.*, one that "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th

31

Cir.1999)). The subjective component is met if the prisoner shows the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

Not every claim of inadequate medical treatment states a claim of constitutional dimension. A claim of medical malpractice or negligence does not allege a federal constitutional violation. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Likewise, a prisoner's disagreement with the medical treatment does not amount to a constitutional violation. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980) ("a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment"), *cert. denied*, 450 U.S. 1041 (1981). A delay in providing medical care does not violate the Eighth Amendment unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993). Where treatment was delayed rather than denied altogether, the inmate must allege facts showing he suffered "substantial harm" as a result of the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Substantial harm consists of lifelong

32

handicap, permanent loss, or considerable pain. *Id.*

Having considered the record, the court finds no instance which reasonably might be construed as deliberate indifference by a defendant to the plaintiff's serious medical needs. Plaintiff's own allegations show that he received medical care and treatment on the vast majority of occasions about which he complains, even while in administrative segregation.

Staff allegedly did not respond to plaintiff's complaints on two occasions. In April of 2006, plaintiff's hands, feet and face swelled painfully at times, but he admits they slowly returned to normal. This precludes a showing that he suffered "substantial harm" as a result of the delay. On another date, someone refused to drain plaintiff's bladder, causing him to do it himself. Although the delay resulted in temporary discomfort or pain, the plaintiff fails to show lifelong handicap, permanent loss, considerable pain, or any other substantial harm as a result. In short, plaintiff's claims of deliberate indifference to serious known medical needs fall far short of being actionable.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (Dk. 54) is granted.

IT IS FURTHER ORDERED that the defendants' motion to dismiss

(Dk.51) is granted in part as stated herein.

Dated this 4th day of March, 2008.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge